UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CR-013 JD |
| | ) | 3:13-CR-109 |
| DANIEL HASLAM | ) | 3:17-CV-653 |

## OPINION AND ORDER

Daniel Haslam was charged with a variety of firearm and controlled substance offenses arising out of his manufacturing of methamphetamine and his possession of firearms and silencers. He pled guilty in return for the government's agreement to dismiss a count that would have carried a mandatory minimum sentence of 30 years. The parties agreed in the plea agreement to a binding floor of 180 months of imprisonment, and the Court accepted that agreement. Mr. Haslam later moved to withdraw his plea, but the Court denied that motion and ultimately sentenced Mr. Haslam to a term of 181 months. On appeal, Mr. Haslam argued that his plea was not knowing and voluntary and that the government breached the plea agreement. The court of appeals rejected both arguments and affirmed.

Mr. Haslam now seeks to vacate his convictions under 28 U.S.C. § 2255. He argues that he is innocent of one count, that his sentence on another count is unlawful, and that he misunderstood the government's ability to present evidence of other alleged criminal conduct at sentencing. He argues that each of these issues was the result of his attorney's ineffective assistance. For the following reasons, the Court finds that Mr. Haslam is not entitled to relief and that no hearing is required on these claims, so it denies Mr. Haslam's motion.

## I. FACTUAL BACKGROUND

Mr. Haslam came to the attention of law enforcement when a woman named Laci Sample reported that he battered her and confined her at his home. Ms. Sample had been dating Mr.

Haslam for a couple weeks at the time of the incident. She reported that Mr. Haslam became suspicious that she was an undercover officer, after which he began beating her and held her against her will over two days. She further reported that, during that time, Mr. Haslam repeatedly screwed and unscrewed several homemade silencers onto the end of a gun barrel, and that he fired multiple shots into the floor. In response to Ms. Sample's report, officers executed a search warrant at Mr. Haslam's home. They found evidence that he had been manufacturing methamphetamine. They also discovered several firearms and a number of devices that appeared to be homemade silencers. [DE 1].

Mr. Haslam was federally indicted on four counts. Count 1 charged that Mr. Haslam possessed an unregistered silencer, in violation of 26 U.S.C. § 5861(d). Count 2 charged that he manufactured methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Count 3 charged that he possessed firearms equipped with a silencer in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Count 4 charged that he possessed firearms as an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3). Most notably, Count 3 carried a mandatory minimum sentence of 30 years of imprisonment because it involved a firearm equipped with a silencer. 18 U.S.C. § 924(c)(1)(B)(ii).

Leading up to trial, the parties began negotiating a plea agreement under which the government would agree to dismiss Count 3 in return for an agreement to a binding floor of 15 years of imprisonment. *See* Fed. R. Crim. P. 11(c)(1)(C). The first plea agreement offered by the government had Mr. Haslam agreeing to plead guilty to the remaining three counts and to an information charging him with discharging a firearm in furtherance of a drug trafficking crime, which carried a 10-year minimum sentence, § 924(c)(1)(A)(iii), as compared to the 30-year minimum in Count 3. The factual basis set forth in that plea agreement recounted Ms. Sample's

allegations of battery and confinement. [DE 146-1 p. 6–7]. However, while Mr. Haslam was willing to admit to unlawfully possessing firearms and silencers and to manufacturing methamphetamine, he denied Ms. Sample's allegations, so he was unwilling to accept that agreement.

The government therefore offered an amended plea agreement that removed Ms. Sample's allegations from the factual basis. The agreement still required Mr. Haslam to plead guilty to the information charging that he discharged a firearm in furtherance of a drug trafficking crime. Mr. Haslam denied that he discharged the firearm in furtherance of a drug trafficking crime, though. Accordingly, the government offered a third plea agreement under which the information charged only that Mr. Haslam *possessed* the firearm in furtherance of a drug trafficking crime, which carries a minimum sentence of 5 years. § 924(c)(1)(A)(i).

Mr. Haslam accepted that version of the plea agreement, and the Court referred the plea to a magistrate judge to conduct a change of plea hearing. At that hearing on September 19, 2013, Mr. Haslam stated under oath that he had read and understood the plea agreement. [DE 92 p. 18]. He also stated that there were not any promises that were causing him to plead guilty that were not contained in the written plea agreement. *Id.* p. 18–19. The plea agreement itself likewise stated, "[o]ther than what is contained in this plea agreement, no predictions, promises, or representations have been made to me as to the specific sentence that will be imposed or any other matter," and that "no promises have been made to me other than those contained in this petition." [DE 52 ¶¶ 9(l), 12]. The agreement further noted, "The defendant fully understands that the United States of America has reserved the right to tell the Sentencing Court the good things about him, and the bad things about him, and has reserved the right to fully inform the Court of the nature and extent of his offense(s)." *Id.* ¶ 9(g). After receiving all of the advisements

under Rule 11, Mr. Haslam pled guilty to possessing unregistered silencers (Count 1); manufacturing methamphetamine (Count 2); possessing firearms as an unlawful user of controlled substances (Count 4); and possessing a firearm in furtherance of a drug trafficking crime (the information). The magistrate judge recommended that the Court accept the pleas.

At that point, the government sent the probation office a memorandum containing its version of the offense conduct, for use in preparing the Presentence Report. The government's memorandum included Ms. Sample's allegations of battery and confinement. Based on those allegations, the Presentence Report calculated the Sentencing Guidelines by using a cross-reference to the guideline for unlawful restraint, and it also applied enhancements for serious bodily injury and restraining a victim, among other enhancements. Mr. Haslam, by counsel, submitted a number of objections to the Presentence Report. As relevant here, he argued that the Sample allegations were outside the scope of relevant conduct for his offenses of conviction, and he also denied the truth of those allegations. The Court thus set an evidentiary hearing, which spanned two days of testimony, and took the objections under advisement. At the commencement of that hearing on December 20, 2013, the Court accepted Mr. Haslam's guilty pleas and the plea agreement. Up until that point, Mr. Haslam had an absolute right to withdraw his plea for any reason. Fed. R. Crim. P. 11(d)(1). He did not do so during that time, even after becoming aware that the government was raising the Sample incident and that those details were included in the Presentence Report.

After the conclusion of hearing, though, Mr. Haslam did move to withdraw his guilty plea. His primary argument was that the government breached the plea agreement. He contended that, by deleting Ms. Sample's allegations from the factual basis in the plea agreement, the government was agreeing not to raise any of those allegations at sentencing, and that the

government breached that agreement. He also argued in passing that, regardless of any promise by the government, his plea was not knowing and voluntary. The Court rejected both arguments. There was no evidence, either in the plea agreement itself or otherwise, that the government had ever agreed not to raise the Sample allegations at sentencing; though deleting those allegations from the plea agreement preserved Mr. Haslam's right to contest those allegations at sentencing, it did not also prohibit the government from seeking to prove them. Thus, the government did not breach the agreement by presenting evidence in support of Ms. Sample's allegations at sentencing. In addition, Mr. Haslam's statements under oath at the change of plea hearing confirmed that his plea was knowing and voluntary, so the Court denied the motion to withdraw the plea.

The Court thus proceeded to resolve the objections to the presentence report. It sustained some of Mr. Haslam's and overruled others, but it generally credited Ms. Sample's testimony that Mr. Haslam had beaten and confined her. The Court's rulings resulted in a total guideline range of 211 to 248 months of imprisonment (151 to 188 months on the three counts of the indictment, plus 60 months on the § 924(c) count in the information). The Court then reconvened the sentencing hearing. After considering the aggravating and mitigating factors, the Court varied downward from that advisory guideline range and imposed a total sentence of 181 months of imprisonment—only one month above the binding floor in the parties' plea agreement.

Mr. Haslam appealed his convictions. He first argued that the government had breached an agreement not to raise the Sample incident at sentencing. He also argued that, even if the government had not made such an agreement, he *believed* that the government had done so and that Ms. Sample's allegations could not be raised at sentencing, so his plea was not knowing and voluntary. The Seventh Circuit rejected both arguments and affirmed. *United States v. Haslam*,

833 F.3d 840 (7th Cir. 2016). Mr. Haslam's convictions became final when the Supreme Court denied his petition for certiorari on January 23, 2017. *Haslam v. United States*, 137 S. Ct. 840 (2017). Mr. Haslam then timely filed a motion to vacate his convictions under 28 U.S.C. § 2255, and that motion has been fully briefed.

## II. STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

## III. DISCUSSION

Mr. Haslam offers three grounds in support of his motion. First, he argues that he is innocent of Count 1, for possessing unregistered silencers. Second, he argues that his sentence on Count 2, for manufacturing methamphetamine, is unlawful and that no term of imprisonment was authorized for that conviction. And third, he argues that at the time he entered his plea, he misunderstood the government's ability to raise other criminal conduct at sentencing, in

particular the Sample incident. He makes each of these arguments through the lens of an ineffective-assistance-of-counsel claim.[1]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) that he was prejudiced by the deficiencies in his counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been different with effective representation. *Strickland v. Washington*, 466 U.S. 687 (1984). "To show prejudice in the plea bargaining context, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial.'" *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). In the sentencing context, a defendant must show that there is a reasonable probably that the results of the sentencing hearing would have been different but for the ineffective assistance. *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005).

---

[1] The government argues that the first two claims are procedurally defaulted if they are presented as standalone claims. Mr. Haslam confirms in his reply, though, that he is bringing these claims only as ineffective-assistance claims, which cannot be procedurally defaulted. *Massaro v. United States*, 538 U.S. 500 (2003). The government also argues that the first two claims are barred by the waiver in Mr. Haslam's plea agreement, but the Court need not reach that argument, as these claims plainly fail on their merits.

A.  **Conviction for Possession of Unregistered Silencers**

Mr. Haslam first argues that he is innocent of the charge in Count 1 for possessing unregistered silencers, and that his attorney was ineffective for failing to advise him of that fact and for permitting him to plead guilty to that charge. Mr. Haslam argues that the statute does not permit or require him, as a mere possessor, to register the silencer, so it could not have been unlawful for him to possess it without registration.

The statute makes it unlawful for a person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). As used in that provision, the term "firearm" includes silencers. 26 U.S.C. § 5845(a). The elements of this offense are that (1) the defendant "consciously possessed what he knew to be a firearm," (2) he "was aware of the features that brought his [firearm] within the realm of regulation," and (3) "the firearm was unregistered." *United States v. Jamison*, 635 F.3d 962, 967–68 (7th Cir. 2011) (internal quotations and alterations omitted); *see also Staples v. United States*, 511 U.S. 600, 602–03 (1994) ("Section 5861(d) makes it a crime, punishable by up to 10 years in prison, see § 5871, for any person to possess a firearm that is not properly registered."); *United States v. Sanders*, 520 F.3d 699, 700 (7th Cir. 2008).

Here, Mr. Haslam admitted to each of those elements at his change of plea hearing, [DE 92 p. 23–25], so he is guilty of this offense. In arguing to the contrary, Mr. Haslam cites to § 5841(b), which requires a "manufacturer, importer, [or] maker" to register each firearm, and requires the transferor of a firearm to register it to the transferee. Mr. Haslam argues that he was only a possessor of firearms, not a manufacturer, importer, or maker, so he was not required to register the firearms. And because he was not required to register the firearms, he concludes, he was allowed to possess them even if they were unregistered. That conclusion does not follow. Regardless of whether Mr. Haslam was required or permitted to register the firearms himself,

8

§ 5861(d) prohibits anyone from possessing a firearm that is not registered to him. *Staples*, 511 U.S. at 602–03. Even accepting Mr. Haslam's premise that the statute did not allow him to register the firearms,[2] all that would mean would be that he could not lawfully possess the firearms at all—not that he could possess them even if they were unregistered. The statute is explicit and makes it unlawful for a person to possess a firearm not registered to him. § 5861(d). Mr. Haslam did so and thus committed this offense. There is no further element of proof that the person would have been able to register the firearm if he tried. *See Jamison*, 65 F.3d at 967–68.

Accordingly, Mr. Haslam's attorney was not ineffective for advising him to plead guilty to this count, and this argument cannot support a claim of ineffective assistance of counsel.

**B.    Sentence for Manufacturing Methamphetamine**

Mr. Haslam next argues that his attorney was ineffective for allowing him to be sentenced to a term of imprisonment on his conviction for manufacturing methamphetamine. He argues that this count, as charged and convicted, does not authorize any term of imprisonment, so the 121-month term of imprisonment that the Court imposed on this count was unlawful.

Mr. Haslam was convicted of manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). As Mr. Haslam notes, § 841(a) only defines offense conduct, it does not specify any penalties. The penalties for that offense are set forth in various subparts under § 841(b), and they vary based on factors like the type and quantity of the substances in question. Because those factors can affect both the minimum and maximum statutory penalties, they must be charged in the indictment and proved beyond a reasonable doubt, either to the jury at trial or through the

---

[2] This premise is itself flawed, though, as Mr. Haslam admitted in his plea agreement that he was manufacturing the silencers, [DE 52 ¶ 9(b)], meaning he was required to register them as a "maker" of silencers. 26 U.S.C. §§ 5841(b); 5845(i).

defendant's admissions at a change of plea hearing. *Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Mr. Haslam argues that he was only convicted under § 841(a), not any of the penalty provisions under § 841(b), so he could not have been sentenced to a term of imprisonment on that count. His argument fails, though, because he was charged with and admitted to all of the facts necessary to impose a sentence of up to 20 years under § 841(b)(1)(C). That provision authorizes a term of imprisonment of not more than 20 years "[i]n the case of a controlled substance in schedule I or II." § 841(b)(1)(C). Methamphetamine is a schedule II controlled substance, so an offense involving methamphetamine will be subject to at least the 20-year maximum term in § 841(b)(1)(C). *United States v. Macedo*, 406 F.3d 778, 785 (7th Cir. 2005) (holding that methamphetamine is a schedule II controlled substance); *Lugue v. Lynch*, 640 F. App'x 545, 549 (7th Cir. 2016) ("[A]ll forms of methamphetamine have been classified by regulation as Schedule II substances, subject to a 20-year maximum sentence, for the past 45 years." (emphasis omitted)). Here, the indictment charged in Count 2 that Mr. Haslam "knowingly and intentionally manufactured methamphetamine, a Schedule II controlled substance." [DE 15]. And Mr. Haslam admitted at his change of plea hearing that he manufactured methamphetamine. [DE 92 p. 26 ("I had taken some pills and manufactured some meth . . . .")]. Thus, the facts necessary to impose a sentence under § 841(b)(1)(C) were charged in the indictment and proved beyond a reasonable doubt.[3]

---

[3] To the extent Mr. Haslam's complaint is that the indictment cites only to § 841(a)(1), and not also to the penalty provision of § 841(b)(1)(C), his argument fails, as an indictment need not include such a detail and the indictment does allege the *facts* necessary to trigger that provision. *United States v. Ocampo*, 890 F.2d 1363, 1373 (7th Cir. 1989) ("The indictment need not cite to an enhanced penalty provision, but instead must only make a defendant aware of the possibility that enhanced penalty provisions could apply."); *see also United States v. Phillips*, 645 F.3d 859, 861 (7th Cir. 2011) ("In order for an indictment to be sufficient, it must identify the elements of

In short, Mr. Haslam was not, as he claims, convicted for "a violation of § 841(a) alone"—he was charged and convicted for violating § 841(a) by manufacturing *methamphetamine*, a schedule II controlled substance that subjected him to the penalties in § 841(b)(1)(C). Mr. Haslam's 121-month sentence on that count was thus within the authorized range of imprisonment under the statute, and his attorney was not ineffective for failing to object to that term.

## C. Relevant Conduct at Sentencing

Finally, Mr. Haslam argues that his attorney rendered ineffective assistance in connection with his guilty plea by failing to properly advise him about the government's ability to present evidence of other alleged criminal conduct at sentencing. In particular, he argues that he believed that the plea agreement prevented the government from raising Ms. Sample's allegations of battery and confinement. He asserts that if his attorney had properly advised him to the contrary, and he knew that the government could still bring the Sample incident up at sentencing, he would not have pled guilty but would have proceeded to trial.

To establish the prejudice element for this claim, Mr. Haslam would have to prove that (1) because of his attorney's ineffective assistance, he misunderstood the government's ability to raise the Sample incident at sentencing, and (2) he would not have pled guilty absent that misunderstanding. *See Thompson v. United States*, 732 F.3d 826 (7th Cir. 2013) (holding that the defendant could not establish prejudice where the record showed he properly understood the consequences of his plea); *Berkey v. United States*, 318 F.3d 768 (7th Cir. 2003) (rejecting an ineffective-assistance claim where, despite the defendant's arguments to the contrary, his

---

the crime, fairly inform the defendant of the charge so that he may prepare a defense, and enable the defendant to evaluate any double jeopardy problems. We have consistently held that nothing more is required." (internal citations omitted)).

11

statements at the change of plea hearing confirmed that he understood the sentencing process and his potential sentences, and that no promises were made to induce his plea).

Mr. Haslam's claim thus fails because this Court and the court of appeals have already concluded that Mr. Haslam did not plead guilty under any such misunderstanding. Those conclusions came in the context of finding that Mr. Haslam's plea was knowing and voluntary, but the underlying facts and arguments are the same as to both inquiries. Mr. Haslam argued previously that he did not understand that the government could bring up the Sample incident at sentencing, so his plea was not knowing and voluntary. *Haslam*, 833 F.3d at 846 ("[Mr. Haslam] contends that he didn't knowingly enter into the plea agreement because he mistakenly thought that it prevented the government from introducing the Sample evidence."). He now argues that he did not understand that the government could bring up the Sample incident at sentencing, so he was prejudiced by his attorney's ineffective assistance. Yet this Court denied Mr. Haslam's motion to withdraw his guilty plea and the Seventh Circuit affirmed Mr. Haslam's conviction on appeal, concluding that Ms. Haslam *did* understand the consequences of his plea, as confirmed by his statements under oath at the change of plea hearing.

In particular, Mr. Haslam stated at the change of plea hearing that no promises were made to him that were causing him to plead guilty that were not contained in the written plea agreement. [DE 92 p. 18]. The plea agreement also notes twice that no promises were made other than those reflected in the agreement. [DE 52 ¶ 9(l) ("Other than what is contained in this plea agreement, no predictions, promises, or representations have been made to me as to the specific sentence that will be imposed or any other matter."), ¶ 12 ("[N]o promises have been made to me other than those contained in this petition . . . ."). And the plea agreement does not contain any promise or representation that the government would not raise the Sample incident at sentencing.

Thus, Mr. Haslam's sworn statements at the change of plea hearing foreclose his later claims that he thought the government had agreed not to raise that incident. As the Seventh Circuit explained on Mr. Haslam's direct appeal:

> In his plea colloquy, Haslam told the magistrate judge under oath that he understood the plea agreement and that no promises were made to induce him to plead guilty other than those contained in the written plea agreement itself. These sworn statements directly contradict Haslam's claim that he proceeded on the understanding that the government had made an extrinsic promise to refrain from presenting evidence of the Sample incident at sentencing. Haslam's argument necessarily entails an assertion that he lied to the magistrate judge. The district judge was entitled to reject this assertion out of hand unless Haslam presented a compelling explanation for his perjury. *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). He did not do so.

*Haslam*, 833 F.3d at 846–47.

On top of that, Mr. Haslam stated in the plea agreement that he "fully understands that the United States of American has reserved the right to tell the Sentencing Court the good things about him, *and the bad things about him*, and has reserved the right to *fully inform the Court of the nature and extent of his offense(s)*." [DE 52 ¶ 9(g) (emphases added)]. Mr. Haslam stated under oath at the change of plea hearing that he had read the plea agreement and that he understood it. [DE 92 p. 18]. Mr. Haslam acknowledges this provision in his motion, and argues that his attorney was ineffective for allowing it to be in the plea agreement, thus permitting the government to raise the Sample incident. As just noted, however, Mr. Haslam *knew* that this paragraph was in the plea agreement (as he testified that he read and understood it). *Id.* With that knowledge, he still signed the plea agreement and still entered his guilty plea. Thus, Mr. Haslam cannot show that he was under any misunderstanding about the government's ability to raise this incident at the time he entered his plea.

In sum, Mr. Haslam's statements under oath at the change of plea hearing confirm that, notwithstanding any erroneous advice he may have received from his attorney, he nonetheless understood that the government was not prevented from raising the Sample incident at sentencing. Thus, he cannot show that he was prejudiced by any ineffective assistance, so his claim fails. *See Missouri v. Frye*, 566 U.S. 134, 142 (2012) ("Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the State substantial protection against later claims that the plea was the result of inadequate advice."); *Thompson*, 732 F.3d at 830 ("[The defendant] cannot show that [his attorney's] alleged failure to clarify the sentencing consequences of pleading guilty to conspiracy was a 'decisive factor' in his decision to forgo trial because the district court's explanation of the sentencing process at [the defendant's] plea colloquy removed any possible prejudice of [the attorney's] advice."); *Berkey*, 318 F.3d at 773.

For the same reasons, Mr. Haslam is not entitled to an evidentiary hearing on this claim. The dispositive facts underlying this claim have already been addressed at a hearing—the change of plea hearing—and Mr. Haslam's sworn statements at that hearing preclude relief on this claim. Mr. Haslam does not attempt to account for those previous statements, and he is not entitled to a new hearing on this motion in order to show that he perjured himself at a prior hearing. *Thompson*, 732 F.3d at 829; *Peterson*, 414 F.3d at 827. Likewise, because no hearing or discovery is warranted on Mr. Haslam's claims, he is not entitled to the appointment of counsel on this motion. *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992). Therefore, the Court denies Mr. Haslam's motion.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). Here, for the reasons just discussed, the Court does not find that Mr. Haslam has made a substantial showing of the denial of any constitutional rights, or that any issues in this motion are adequate to deserve encouragement to proceed further. The Court therefore denies the issuance of a certificate of appealability.

The Court advises Mr. Haslam that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Mr. Haslam that any notice of appeal of this judgment must be filed within 60 days after the judgment is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V. CONCLUSION

For those reasons, the Court DENIES Mr. Haslam's motion for relief under § 2255 [DE 138], and DENIES the issuance of a certificate of appealability. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: April 23, 2018

                                                /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court